## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| TONY CURRUTHERS<br>a/k/a TONY NEELY,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)  Cv. No. 13-02556<br>)  Cr. No. 09-20439<br>)<br>)<br>)<br>)<br>) |

## ORDER

Before the Court are four motions.  The first is Petitioner Tony Curruthers' July 22, 2013 pro se motion seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (the "§ 2255 Motion").  (ECF No. 1.)[1]  The United States of America (the "Government") responded to Curruthers' § 2255 Motion on July 7, 2014.  (ECF No. 5.)  The second is Curruthers' August 18, 2015 pro se motion to supplement his § 2255 Motion in light of <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015) (the "<u>Johnson</u> Motion").  (ECF No. 8.)  The Government responded to Curruthers' <u>Johnson</u> Motion on February 19, 2020.  (ECF No. 32.)  The third

---

[1] Citations to (ECF No. ##) refer to this civil case, <u>Curruthers v. United States</u>, No. 2:13-cv-02556 (W.D. Tenn.).  Citations to (Cr. ECF No. ##) refer to the criminal case <u>United States v. Curruthers</u>, No. 2:09-cr-20439 (W.D. Tenn.).

is Curruthers' August 27, 2019 pro se motion to appoint counsel. (ECF No. 20.)  The Government has not responded to Curruthers' motion to appoint counsel.  The fourth is Curruthers' October 21, 2019 pro se motion to amend his § 2255 Motion to add a claim in light of Rehaif v. United States, 139 S. Ct. 2191 (2019) (the "Rehaif Motion").  (ECF No. 24.)  The Government responded to Curruthers' Rehaif Motion on February 19, 2020.  (ECF No. 32.)

For the following reasons, Curruthers' motions are DENIED.

## I.  Background

On October 27, 2009, a federal grand jury in the Western District of Tennessee returned a two-count indictment against Curruthers, charging him with being a felon in possession of firearms, a violation of 18 U.S.C. 922(g).  (Cr. ECF No. 3.)  On November 10, 2010, a jury convicted Curruthers on the two counts charged in the indictment.  (Cr. ECF Nos. 45, 46, 48.)

The Presentence Investigation Report ("PSR") calculated Curruthers' guidelines sentencing range under the 2010 edition of the United States Sentencing Commission Guidelines Manual (the "U.S.S.G.").  (PSR ¶ 13.)  Curruthers' base offense level was 24.  (Id. ¶ 15.)  He was subject to a four-level enhancement because one of the firearms he was found to possess had an obliterated serial number.  (Id. ¶¶ 7, 16.)  He was subject to another two-level enhancement because of reckless endangerment during flight.  (Id. ¶¶ 10, 11, 19.)  Curruthers was subject to

a three-level enhancement because he was found to be an armed career criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA").  (Id. ¶ 23.)  The PSR identified six prior convictions for violent felonies: (1) a 1986 Tennessee conviction for burglary in the third degree; (2) a 1991 Tennessee conviction for solicitation to commit robbery; (3) two 1991 Tennessee convictions for aggravated assault; (4) a 1993 Tennessee conviction for burglary of a building; and (5) a 2004 federal conviction for aiding and abetting armed bank robbery. (Id. ¶¶ 31, 39, 40, 41, 46.)

Curruthers' total offense level was 33 with a criminal history category of VI.  (Id. ¶¶ 25, 79.)  Curruthers' recommended guideline range was 235-293 months.  (Id. ¶ 79.)  On March 22, 2011, the Court sentenced Curruthers to 241 months in prison with a five-year term of supervised release. (Cr. ECF Nos. 55, 56.)  Curruthers timely appealed his conviction and sentence.  (Id. at 58.)  The Sixth Circuit affirmed.  United States v. Curruthers, 511 F. App'x 456 (6th Cir. 2013) (per curiam).

On July 22, 2013, Curruthers filed a pro se motion seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, raising two claims of ineffective assistance of counsel. (ECF No. 1.)  On July 7, 2014, the Government responded to Curruthers' § 2255 Motion.  (ECF No. 5.)  Before the Court ruled

3

on Curruthers' initial § 2255 Motion, Curruthers filed a motion
to amend his § 2255 Motion to add a Johnson claim. (ECF No. 8.)
Curruthers filed another motion asking the Court to appoint
counsel to help with Johnson review. (ECF No. 12.) After
further filings reiterating his request for appointment of
counsel and Johnson review, (see ECF Nos. 13, 14), the Court
appointed counsel on June 24, 2016. (Cr. ECF No. 75.)

On June 27, 2016, Curruthers' appointed counsel filed a
notice with the Court representing that he had reviewed
Curruthers' case in light of Johnson and that he would not be
filing a Johnson claim on Curruthers' behalf. (Cr. ECF No. 76.)
Shortly after filing that notice, however, Curruthers' counsel
filed a motion asking the Court to hold Curruthers' Johnson
Motion in abeyance in light of Mathis v. United States, 136 S.
Ct. 2243, 2245 (2016), and this Circuit's pending en banc review
in United States v. Stitt, 637 F. App'x (6th Cir. 2016). (Cr. ECF
No. 77.) The Government opposed holding Curruthers' Johnson
Motion in abeyance. (See Cr. ECF No. 80.) On July 28, 2016,
the Court granted Curruthers' abeyance motion, directed that the
matter be held in abeyance, and administratively closed the case.
(Cr. ECF No. 81.)

On July 10, 2017, Curruthers moved to reopen the case and
his appointed counsel, having again reviewed Curruthers' case in
light of the relevant case law, moved to withdraw. (Cr. ECF

4

Nos. 82, 83.)   Shortly after moving to withdraw, however, Curruthers' counsel asked to withdraw his motion to withdraw as counsel because of this Court's recent decision in Mitchell v. United States, 257 F. Supp. 3d 996 (W.D. Tenn. 2017), aff'd in part, vacated in part, and remanded, 905 F.3d 991 (6th Cir. 2018). (Cr. ECF No. 86.)   The Court granted Curruthers' motion to withdraw his withdrawal motion, allowing Curruthers' counsel to continue to represent him.  (Cr. ECF No. 87.)

On December 3, 2018, after this Court had been reversed in part in Mitchell, 905 F.3d 991, and after other developments in the relevant case law, Curruthers' counsel again moved to lift the stay and to withdraw as counsel.  (Cr. ECF Nos. 88, 89.)   On January 24, 2019, the Court granted that motion, lifted the stay, and allowed Curruthers' counsel to withdraw.  (Cr. ECF Nos. 90, 91.)

On August 27, 2019, Curruthers filed another pro se motion to appoint counsel.  (ECF No. 20; Cr. ECF No. 92.)   Shortly after, on October 21, 2019, Curruthers filed an additional motion to amend his original § 2255 Motion, seeking to add a claim in light of Rehaif, 139 S. Ct. 2191.  (ECF No. 24.)   On January 9, 2020, the Court ordered the Government to respond to Curruthers' Johnson Motion.  (ECF No. 27.)   After a brief extension, on February 19, 2020, the Government responded to both Curruthers' Johnson Motion and his Rehaif Motion.  (ECF No. 32.)

5

## II.   Legal Standards

### A.   Section 2255

A prisoner in custody under sentence of a court
established by [an] Act of Congress claiming the right
to be released upon the ground that the sentence was
imposed in violation of the Constitution or laws of
the United States, or that the court was without
jurisdiction to impose such sentence, or that the
sentence was in excess of the maximum authorized by
law, or is otherwise subject to collateral attack, may
move the court which imposed the sentence to vacate,
set aside or correct the sentence.

28 U.S.C. § 2255(a). "A prisoner seeking relief under 28 U.S.C.

§ 2255 must allege either: (1) an error of constitutional

magnitude; (2) a sentence imposed outside the statutory limits;

or (3) an error of fact or law that was so fundamental as to

render the entire proceeding invalid." Short v. United States,

471 F.3d 686, 691 (6th Cir. 2006) (quotation marks and citation

omitted).

A § 2255 motion is not a substitute for a direct appeal.

Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013). Claims

not raised on direct appeal are procedurally defaulted and may

not be raised on collateral review unless the petitioner shows

cause and prejudice. See United States v. Frady, 456 U.S. 152,

167-68 (1982); Bousley v. United States, 523 U.S. 614, 621-22

(1998). Alternatively, a petitioner may obtain review of a

procedurally defaulted claim by demonstrating his "actual

innocence." Bousley, 523 U.S. at 622-23.

6

One exception to these strict rules of procedural default is ineffective-assistance-of-counsel claims. There is no procedural default for the failure to raise an ineffective-assistance-of-counsel claim on direct appeal.[2] See Massaro v. United States, 538 U.S. 500, 503-04 (2003); Huff v. United States, 734 F.3d 600, 606 (6th Cir. 2013) ("Claims of ineffective assistance of counsel are properly raised in a section 2255 motion.") (citations omitted). Ineffective-assistance-of-counsel claims brought under § 2255 are subject to the standard in Strickland v. Washington, 466 U.S. 668 (1984). See Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996).

Under Strickland, to establish that ineffective assistance of counsel deprived a defendant of his Sixth Amendment right to counsel, "the defendant must show that counsel's performance was deficient[] . . . [and] that the deficient performance prejudiced the defense." 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

---

[2] Unless the record below is "sufficiently developed," this Circuit normally leaves ineffective-assistance-of-counsel claims to a district court to address in the first instance under § 2255 petitions. See, e.g., United States v. Libbey-Tipton, 948 F.3d 694, 698 (6th Cir. 2020); United States v. Mann, 552 F. App'x 464, 471 (6th Cir. 2014); United States v. Williams, 612 F.3d 500, 508 (6th Cir. 2010).

To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In considering a claim of ineffective assistance, a court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. . . . The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687, 689). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Humphress v. United States, 398 F.3d 855, 859 (6th Cir. 2005) (quoting Strickland, 466 U.S. at 694). "In assessing prejudice under Strickland, the question is not whether a court can be certain

8

counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . .  The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111-12 (citations omitted).

**B.  Motion to Amend**

A motion to amend a § 2255 motion is governed by Federal Rule of Civil Procedure 15.  Clark v. United States, 764 F.3d 653, 661 (6th Cir. 2014); see also Mayle v. Felix, 545 U.S. 644, 655 (2005).  Claims not brought in an original § 2255 motion or filed within the relevant one-year statute of limitations, see Reese v. United States, 2016 WL 1050719, at *2 (E.D. Tenn. Mar. 16, 2016) (citations omitted), vacated and remanded on other grounds, 727 F. App'x 149 (6th Cir. 2018), are barred unless they "relate back" under Rule 15(c)(1)(B) to a claim raised in the original motion.  See Evans v. United States, 284 F. App'x 304, 305, 313 (6th Cir. 2008); cf. Cowan v. Stovall, 645 F.3d 815, 819 (6th Cir. 2011).  A claim relates back to the date of an original pleading if the original and amended pleadings "'ar[i]se out of the [same] conduct, transaction, or occurrence . . . .'" Fed. R. Civ. P. 15(c)(1)(B).  An untimely motion to amend or supplement a § 2255 motion cannot relate back if it raises a new ground for relief based on different facts than the claims raised in the original § 2255 motion.  Berry v.

9

United States, 2017 WL 401269, at *10 (W.D. Tenn. Jan. 30, 2017)
(citing Anderson v. United States, 39 F. App'x 132, 136 (6th
Cir. 2002)); see also Mayle, 545 U.S. at 664. "[I]f a movant
seeks to 'introduce a new legal theory based on facts different
from those underlying the timely claims,' the amendment [does
not] relate back and [is] time-barred." Berry, 2017 WL 401269,
at *10 (quoting United States v. Hicks, 283 F.3d 380, 388 (D.C.
Cir. 2002)).

Alternatively, a Court may deny leave to amend if the
amendment would be futile. Parchman v. SLM Corp., 896 F.3d 728,
737-38 (6th Cir. 2018) (citing Foman v. Davis, 371 U.S. 178, 182
(1962)). "A proposed amendment is futile if the amendment could
not withstand a Rule 12(b)(6) motion to dismiss." Id. (citing
Beydoun v. Sessions, 871 F.3d 459, 469 (6th Cir. 2017)); United
States v. McShan, 2019 WL 6974392, at *2 (S.D. Ohio Dec. 20,
2019) (denying motion to amend a § 2255 petition because the
amended motion did not state a claim on which habeas relief could
be granted).

**C.   ACCA's Framework**

Under the ACCA, a defendant is an armed career criminal and
subject to a mandatory minimum sentence of 180 months in prison
if he is convicted of violating 18 U.S.C. § 922(g) and has at
least three prior convictions for "violent felon[ies]" and/or
"serious drug offense[s]." 18 U.S.C. § 924(e)(1); Braden v.

10

United States, 817 F.3d 926, 932 (6th Cir. 2016) (citation
omitted).  Without the prior qualifying convictions, a defendant
convicted under § 922(g) is subject to a statutory maximum
sentence of 120 months.  18 U.S.C. § 924(a)(2).

The ACCA defines a "violent felony" as "any crime punishable
by imprisonment for a term exceeding one year" that: (a) "has as
an element the use, attempted use, or threatened use of physical
force against the person of another" (the "use-of-force clause");
(b) "is burglary, arson, or extortion, [or] involves use of
explosives" (the "enumerated-offenses clause"); or
(c) "otherwise involves conduct that presents a serious
potential risk of physical injury to another" (the "residual
clause").  18 U.S.C. § 924(e)(2)(B).

In Johnson, the Supreme Court held that the residual clause
of the ACCA is unconstitutionally vague.  135 S. Ct. at 2557-58;
see also United States v. Priddy, 808 F.3d 676, 683 (6th Cir.
2015) ("The government . . . cannot enhance [a defendant's]
sentence based on a prior conviction that constitutes a violent
felony pursuant only to the residual clause.") (subsequent
history omitted).  Johnson did not invalidate sentencing
enhancements under ACCA's use-of-force clause or enumerated-
offenses clause.  135 S. Ct. at 2563; see also Priddy, 808 F.3d
at 683 ("[A] defendant can still receive an ACCA-enhanced

sentence based on the statute's use-of-force clause or enumerated-offense[s] clause[.]").

"When determining which crimes fall within . . . the violent felony provision" of the ACCA, "federal courts use the categorical approach." United States v. Covington, 738 F.3d 759, 762 (6th Cir. 2014) (quotation marks omitted); see also Mathis, 136 S. Ct. at 2248. Using that approach, courts "look[ ] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor v. United States, 495 U.S. 575, 600 (1990).

"[T]here are two steps in applying the categorical approach to determine whether a prior conviction constitutes . . . a violent felony under the ACCA." Covington, 738 F.3d at 763. "First, a court must ask whether the statute at issue is divisible by determining if the statute lists 'alternative elements.'" Id. (quoting Descamps v. United States, 570 U.S. 254, 277 (2013)). "[A] divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." Descamps, 1570 U.S. at 260.

If a statute is divisible, meaning that it "comprises multiple, alternative versions of the crime," a court uses a "modified categorical approach" and may "examine a limited class of documents," such as the indictment and jury instructions, "to

determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." <u>Id.</u> at 2283-84. "Where the defendant has pled guilty, these so-called <u>Shepard</u> documents may include the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" <u>United States v. Denson</u>, 728 F.3d 603, 608 (6th Cir. 2013) (quoting <u>Shepard v. United States</u>, 544 U.S. 13, 16 (2005)). "[T]he question is whether the court documents establish that the defendant necessarily admitted the elements of a predicate offense through his plea." <u>United States v. McMurray</u>, 653 F.3d 367, 377 (6th Cir. 2011) (subsequent history, quotation marks, and citation omitted).

After having determined which of a divisible statute's alternative elements formed the basis of the defendant's prior conviction, the second step in the categorical approach requires the court to "ask whether the offense the statute describes, as a category, is a [violent felony]." <u>Covington</u>, 738 F.3d at 763. Under the categorical approach, a court must compare the elements of the statute under which the defendant was convicted with "the elements of the 'generic' crime -- <u>i.e.</u>, the offense as commonly understood." <u>Descamps</u>, 570 U.S. at 257. The prior conviction will qualify as a predicate offense for purposes of the ACCA only if the elements of the statute of conviction are the same

as, or narrower than, those of the generic offense.   United States v. Brown, 195 F. Supp. 3d 926, 930 (E.D. Mich. 2016) (citing Descamps, 570 U.S. at 257).   "If the offense 'sweeps more broadly' and 'criminalizes a broader swath of conduct' than [would] meet these tests, then the offense, as a category, is not a [violent felony]."   Covington, 738 F.3d at 764 (quoting Descamps, 570 U.S. at 258, 260, 270-74).

## III. Analysis

### A. Section 2255 Motion

In his § 2255 Motion, Curruthers alleges two grounds for relief: (1) his counsel was ineffective for failing to object to prosecutorial misconduct and failing to request a curative instruction for prosecutorial misconduct at trial and for failing to raise the prosecutorial misconduct on direct appeal;[3] and (2) his counsel was ineffective for failing to request a competency hearing before trial.   (ECF No. 1.)

### 1. Timeliness

A § 2255 motion is timely if it is filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. 2255(f)(1).   When a federal criminal defendant appeals his conviction, if affirmed, his conviction becomes final for § 2255 purposes upon the expiration of the 90-day period during

---

[3] Curruthers was represented by the same counsel at trial and on appeal.   (See ECF No. 5-1.)

which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition was filed. Sanchez-Castellano v. United States, 358 F.3d 424, 426–27 (6th Cir. 2004) (citing Clay v. United States, 537 U.S. 522, 532 (2003)).

This Circuit issued its opinion affirming Curruthers' conviction on January 10, 2013. Curruthers, 511 F. App'x 456; (Cr. ECF No. 69). Curruthers filed his § 2255 Motion on July 22, 2013. (ECF No. 1.) Curruthers' § 2255 Motion is timely.

### 2. Ineffective Assistance of Counsel – Prosecutorial Misconduct

Curruthers contends that his counsel was ineffective by failing to object to a statement the prosecutor made in opening statement; by failing to request a contemporaneous curative instruction after the prosecutor made a specific statement in closing argument; and by failing to raise a prosecutorial misconduct claim on direct appeal. (See ECF No. 1-1 at 3-7.) Curruthers argues that his counsel was ineffective for failing to object to and failing to request a curative instruction when the prosecutor said he believed Curruthers was "casing whatever store or wherever [sic] they were at the time and I think it's a serious case because what could have happened [sic] or what was about to happen." (Id. at 3-4). Curruthers argues that the failure to object to the opening statement and the failure to

request a contemporaneous curative instruction during closing argument "allowed the prosecution to mislead the jury that [Curruthers] was casing a store and that a robbery was about to occur, thereby, infecting the trial with unfairness as to make the resulting conviction a denial of due process." (Id. at 4.) Curruthers also argues that his counsel was ineffective for failing to raise prosecutorial misconduct arguments on appeal based on the prior statements. (Id. at 3, 7.)

The statements to which Curruthers refers, as shown in the trial transcript, are the prosecutor's statements that:

> (1) You'll hear that Officer Boyce thought that the defendant looked suspicious, that they were driving at a very slow pace, as though they were casing wherever [sic] store or wherever they were at the time. (Cr. ECF No. 65 at 45:8-11) (opening statement).

> (2) You know, looking at all the evidence in this case, it's a very serious case and it's a serious case because there are two loaded firearms that are involved, but I think it's a more serious case because what could have happened or what was about to happen. (Cr. ECF No. 66 at 253:18-22) (closing argument).

Curruthers' counsel objected to the latter statement under Federal Rule of Evidence 404(b). (See id. at 253:23-260:18.) The Court ultimately overruled that objection but was "concerned" that it "might mislead the jury" and counseled the prosecution to "tread gently" and argue "carefully." (Id. at 256:19-260:18.) The Court implied that it would cure any adverse effect that the prosecutor's comment might have had by issuing jury instructions

that Curruthers was only on trial for possessing the firearms at issue and that any statement made by counsel was not evidence. (See id.) ("I'm still concerned about the confusion. I guess I could partly solve that in the instructions."); ("I think you can argue it if you argue it carefully, but I think I'm also going to have to come back behind you probably.").

After arguments, the Court instructed the jury, in relevant part:

> This defendant is not on trial for any act or conduct alleged in the indictment or not alleged in the indictment. Let me say that again. This defendant is not on trial for any act or conduct not alleged in the indictment. Another way of saying that is he is on trial only for the conduct alleged in the two counts of the indictment. (Id. at 285:19-24.)

> As I stated, you must consider only the evidence I have admitted in the case. The term "evidence" includes the testimony of the witnesses, the exhibits admitted in the record, any facts stipulated, and any facts of which the Court has taken judicial notice. Remember that anything the lawyers say or argue is not evidence in the case. It is your own recollection and interpretation of the evidence that controls. What the lawyers say is not binding on you. (Id. at 286:8-16.)

> I caution you that you're here to determine from the evidence in this case whether the defendant is guilty or not guilty. The defendant is on trial only for the specific offenses alleged in the indictment. (Id. at 297:21-24.)

Curruthers argues that these instructions were insufficient and that his counsel should have requested a contemporaneous curative instruction at trial. (ECF No. 1-1 at 3-4.) He also argues

that counsel was deficient for failing to raise this issue on direct appeal. (Id. at 3, 7.)

Counsel is alleged to have been ineffective: (1) by failing to object to the prosecutor's statement in opening statement; (2) by failing to request a contemporaneous curative instruction after the prosecutor's statement in closing argument; and (3) by failing to raise a prosecutorial misconduct claim on direct appeal. The Court's analysis must be conducted in the context of the trial as a whole. See Hodge v. Hurley, 426 F.3d 368, 384 (6th Cir. 2005) ("We emphasize that the each instance of prosecutorial misconduct — and each failure to object thereto - must not be considered in isolation, but in the context of the prosecution's entire opening statement and closing argument . . . .").

Opening Statement. Curruthers' counsel's decision not to object to the prosecutor's statement during opening statement did not "f[a]ll below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Curruthers' counsel said he decided not to object "for strategic reasons" because, in his twenty-two years of federal criminal trial experience, he "did not believe [the] statement was objectionable because opening statements are not evidence" and the statement "neither rose to a constitutional violation nor [was a] statement that would call for a motion for a mistrial." (ECF No. 5-1 ¶ 3.)

18

A failure to object to prosecutorial misconduct can constitute ineffective assistance of counsel. Hodge, 426 F.3d at 377 (citations omitted). The failure to object usually does not constitute deficient performance when the decision is based on reasonable trial strategy. See Washington v. Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000) ("[C]ounsel's failure to object to prosecutorial misconduct constitutes defective performance when that failure is due to clear inexperience or lack of controlling law, rather than reasonable trial strategy."); see also Hodge, 426 F.3d at 385 ("[A]n action is not objectively reasonable unless it 'might be considered sound trial strategy.'") (quoting Strickland, 466 at 689). However, "the label 'strategy' is not a blanket justification for conduct which otherwise amounts to ineffective assistance of counsel." Lovett v. Foltz, 1989 WL 101522, at *4 (6th Cir. 1989). "[E]ven deliberate trial tactics may constitute ineffective assistance of counsel if they fall outside the wide range of professionally competent assistance." Martin v. Rose, 744 F.2d 1245, 1249 (6th Cir. 1984) (quotation marks and citation omitted).

In retrospect, the prosecutor's statement during opening statement was objectionable. Opening statements that are supported by the evidence presented at trial (or rely on reasonable inferences drawn from that evidence) are normally not objectionable. See United States v. McShan, 757 F. App'x 454,

462 (6th Cir. 2018) (citation omitted).  But prosecutors may not misstate the evidence, United States v. Carter, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not supported by the evidence, Abela v. Martin, 380 F.3d 915, 929 (6th Cir. 2004) (subsequent history omitted).

At trial, the evidence did not support the statement in the prosecutor's opening.  Officer Boyce, the officer who arrested Curruthers, testified that the reason his attention was drawn to Curruthers' car was that, during his canvasing of an area in response to a robbery, he noticed a car with a "rear vent window [] broken out."  (Cr. ECF No. 65 at 58:5-24.)  Officer Boyce thought this was suspicious because it was consistent with what, in his experience, suggested a stolen car.  (See id. at 58:24-59:15.)  Officer Boyce did not testify (and it cannot be reasonably inferred from his testimony) that the car was "driving at a slow pace" or that he thought Curruthers was "casing wherever [sic] store" at the time.  (See id.)  In retrospect, the prosecutor's statement was objectionable because it was not supported by the evidence.

Counsel's failure to object to the statement did not fall "below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  His tactics did not fall "outside the wide range of professionally competent assistance."  Martin, 744 F.2d at 1249.  Because the statement was prospective, any impropriety

was not "plain enough for a minimally competent counsel to have objected." Wilson v. Bell, 368 F. App'x 627, 636 (6th Cir. 2010) (quoting Hofbauer, 228 F.3d at 698).   Officer Boyce might have testified to the prosecutor's description of events.   It is not objectively unreasonable to fail to object to "evidence which the prosecutor [is] reasonably expected to produce." Frazier v. Cupp, 394 U.S. 731, 736 (1969); cf. McShan, 757 F. App'x at 463 ("[N]ot every variance between a prosecutor's description of the evidence during an opening statement and the actual presentation of the evidence to the jury constitutes reversible error.") (citing Frazier, 394 U.S. at 736).   Curruthers' counsel's failure to object to the prosecutor's comments during opening statement did not "f[a]ll below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Closing Argument.   Curruthers' counsel's decision not to ask for a contemporaneous curative instruction during closing argument also did not "f[a]ll below an objective standard of reasonableness."   See id.   Curruthers' counsel's stated justification for not seeking a contemporaneous curative instruction was that he "knew that the Court would ultimately give an instruction that told the jury not to consider [the prosecutor's] statements as evidence" and "that asking for a curative statement at that time would draw more attention than necessary" to the statement.   (ECF No. 5-1 at ¶ 4.)

"At a minimum, an attorney who believes that opposing counsel has made improper closing arguments should request a bench conference at the conclusion of the opposing argument, where he or she can lodge an appropriate objection out the hearing of the jury." Hodge, 426 F.3d at 386 n.25 (citing United States v. Young, 470 U.S. 1, 13-14 (1985)). Curruthers' counsel did that. At sidebar, the Court concluded that, although the prosecutor's remark was "misleading" and potentially improper under Federal Rule of Evidence 404(b), it could be cured by instructing the jury that Curruthers was on trial only for possessing the firearms at issue and that any statement made by counsel was not evidence. (See Cr. ECF No. 66 at 256:19-260:18.)

Curruthers' counsel's decision not to request a contemporaneous curative instruction was not objectively unreasonable because a "trial court can generally correct [improper prosecutorial statements] by instructing the jury that closing arguments are not evidence." United States v. Crosgrove, 637 F.3d 646, 664 (6th Cir. 2011) (citing United States v. Emuegbunam, 268 F.3d 377, 406 (6th Cir. 2001)); cf. Donnelly v. DeChristoforo, 416 U.S. 637, 643-45 (1974) (holding that a prosecutor's ambiguously improper remarks during closing argument did not violate defendant's right to a fair trial because the court addressed the remarks and gave a curative instruction later in the jury instructions). It was not

22

objectively unreasonable as a trial tactic for Curruthers' counsel not to request a contemporary curative instruction. See Schauer v. McKee, 401 F. App'x 97, 101 (6th Cir. 2010) ("Not drawing attention to a statement may be perfectly sound from a tactical standpoint.") (citing United States v. Caver, 470 F.3d 220, 244 (6th Cir. 2006)).  Once the Court had decided that its final jury instruction was sufficient to avoid the jury's being misled, a request for a contemporaneous instruction would have been unavailing.  Curruthers' counsel's failure to request a contemporaneous curative instruction during closing argument did not "f[a]ll below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Direct Appeal.  Curruthers' counsel's decision not to raise prosecutorial misconduct on direct appeal did not "f[a]ll below an objective standard of reasonableness" because such an argument would have failed.  See Mapes v. Coyle, 171 F.3d 408, 427 (6th Cir. 1999) ("Counsel [cannot] be unconstitutionally ineffective for failing to raise . . . meritless arguments.").  Curruthers' counsel justified his failure to raise prosecutorial misconduct on direct appeal because he did not believe the remarks came close to the standard for prosecutorial misconduct and that raising such a claim would be "frivolous" and would "detract[] from Mr. Curruthers['] other viable arguments." (ECF No. 5-1 ¶ 5.)

To have prevailed on a claim of prosecutorial misconduct, Curruthers would have had to show that the prosecutor's conduct was "so egregious as to deny [him] a fundamentally fair trial[.]" Johnson v. United States, 1995 WL 27406, at *2 (6th Cir. 1995) (citing Donnelly, 416 U.S. at 643-45). This Circuit employs a two-step approach to determine whether prosecutorial misconduct violates a defendant's due process rights. See United States v. Carroll, 26 F.3d 1380, 1385-87 (6th Cir. 1994). First, the court decides whether the prosecutor made remarks that were improper. United States v. Carter, 236 F.3d 777, 783 (6th Cir. 2001) (citations omitted). Second, if the remarks were improper, the court considers and weighs four factors: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong. Macias v. Makowski, 291 F.3d 447, 452 (6th Cir. 2002) (citing Carter, 236 F.3d at 783, and Carroll, 26 F.3d at 1385); cf. Lovett, 1989 WL 101522, at *6 ("In evaluating charges of prosecutorial misconduct, the court should look at whether the defense invited the error, the pervasiveness of the misconduct, its egregiousness and deliberateness, and its weight when compared to the total body of evidence produced at trial.") (citing Darden v. Wainwright, 477 U.S. 168, 181-83 (1986)).

24

"Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." Young, 470 U.S. at 11.

Even assuming the remarks were improper, the Carroll factors, considered together, do not weigh in favor of Curruthers:

a. Misleading and Prejudicial. The first factor weighs in Curruthers' favor. As the Court recognized at trial, the statement at closing was potentially misleading and could have prejudiced Curruthers because the jury could have thought that Curruthers was guilty of conduct other than what he was charged with in the indictment or that he was about to commit another crime when he was arrested. (See Cr. ECF No. 66 at 256:19-260:18.)

b. Isolated or Extensive. The second factor weighs against Curruthers. There were only two isolated comments. The first was a single representation during opening statement, and, after the evidence did not support that representation, the prosecution did not mention Officer Boyce's unsupported belief in Curruthers' "casing wherever [sic] store." The second statement was a single sentence at the beginning of closing argument. After the Court instructed the prosecutor to tread carefully, the

prosecutor rephrased and did not speculate about future conduct.

c. <u>Deliberate or Accidental</u>.  This factor is neutral.  The first statement appears accidental because it is reasonable to assume that the Government thought Officer Boyce's testimony would be consistent with its opening. Although at trial the Court did not find that the prosecutor's closing argument was intended to mislead the jury, the second statement was deliberate because the prosecutor at sidebar said he alluded to his "theory of the case": that Curruthers possessed the firearms because "he was probably about to commit robbery."  (<u>Id.</u> at 255:11-22.)

d. <u>Strength of Evidence</u>.  The strength of the evidence weighs against Curruthers.  The evidence that Curruthers possessed the firearms was strong.  On appeal, the Court affirmed the jury's determination that the proof submitted at trial was sufficient to establish guilt beyond a reasonable doubt.  <u>See</u> <u>Curruthers</u>, 511 F. App'x at 459-60.  The statements by the prosecution alluding to possible future conduct, although potentially misleading and prejudicial, carried little weight given the proof in this case.  <u>See</u> <u>Darden</u>, 477 U.S. at 182 ("[T]he overwhelming eyewitness and circumstantial

26

evidence to support a finding of guilt on all charges, reduced the likelihood that the jury's decision was influenced by argument.") (internal citation and quotation marks omitted).

When weighing these factors, the Court finds that the prosecutor's statements did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. at 643). Because Curruthers' prosecutorial misconduct claim would have failed on direct appeal, counsel's failure to raise it was not objectively unreasonable. See Mapes, 171 F.3d at 427.

This is not a case where counsel was so deficient and prosecutorial misconduct so pervasive that habeas relief is warranted. See, e.g., Hodge, 426 F.3d at 376-89 (child rape defendant was prejudiced by his counsel's myriad failures to object to prosecutor's suggestions that defendant, defendant's expert, and defense counsel were lying, prosecutor's misrepresentation of examining physician's testimony, and prosecutor's general argument that jury should convict defendant on the basis of his bad character; thus, defense counsel provided ineffective assistance, given lack of physical evidence confirming sexual activity and importance of defendant's credibility); Hofbauer, 228 F.3d at 703-09 (counsel was

ineffective for failing to object to the prosecutor's introduction of evidence of the defendant's unseemly character, including statements about his alleged abusive behavior, excessive alcohol consumption, and drug abuse); cf. Andrus v. Texas, No. 18-9674, 2020 WL 3146872, at *5-8 (U.S. June 15, 2020) (per curium) (defense counsel provided constitutionally deficient performance by failing to investigate mitigating evidence and to rebut aggravating evidence). Curruthers is not entitled to habeas relief based on the prosecutor's comments or his counsel's failure to object to them. See Young, 470 U.S. at 11 ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context . . . ."). Curruthers' § 2255 Motion on this ground is DENIED.

### 3. Ineffective Assistance of Counsel – Failure to Request Competency Hearing

Curruthers contends that his counsel was ineffective for failing to request a competency hearing before trial. (See ECF No. 1-1 at 7.) Curruthers contends that his counsel was required to seek a competency hearing because Curruthers had been diagnosed with "schizoaffective disorder among other things." (Id. at 8.) Curruthers' counsel submits that he never requested a competency hearing because Curruthers never appeared to be

incompetent and appeared to have a fully rational and factual understanding of the trial process.  (ECF No. 5-1 ¶ 9.)

"Counsel's failure to request the trial court to order a hearing or evaluation on the issue of the defendant's competency might render counsel's performance objectively unreasonable, provided there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency."  United States v. Dubrule, 822 F.3d 866, 881 (6th Cir. 2016) (internal alterations and quotation marks omitted) (citing Jermyn v. Horn, 266 F.3d 257, 283 (3d Cir. 2001)).  To be competent to stand trial, a defendant must have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and must possess "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam). "There are . . . no fixed or immutable signs which invariably indicate the need for [] inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated."  Drope v. Missouri, 420 U.S. 162, 180 (1975).  The "emphasis is on capacity to consult with counsel and comprehend the proceedings[] . . . ."  Pate v. Robinson, 383 U.S. 375, 388 (1966) (Harlan, J., dissenting).  Even mental illness does not

mean that a defendant is not competent to stand trial.  <u>Dubrule</u>, 822 F.3d at 875-76 (citations omitted).

Before trial, Curruthers was diagnosed with schizoaffective disorder, alcohol abuse, borderline intellectual functioning, hypertension, diabetes, hepatitis C, gastroesophageal reflux disease, and hyperlipidemia; had a Global Assessment of Functioning ("GAF") score of 50;[4] was prescribed Prolixin and Cogentin; and "was referred to the Southeast Mental Health Center on April 21, 2009 . . . in connection with his supervised release conditions." (ECF No. 5-1 ¶ 6.) Curruthers' counsel knew of those diagnoses and conditions. (<u>Id.</u>; <u>see also</u> Cr. ECF No. 59 at 16:21-20:2.) Awareness of mental illnesses, alone, does not require counsel to request a competency hearing. <u>See</u> <u>Dubrule</u>, 822 F.3d at 875-76. There must be sufficient indicia of incompetence to give objectively reasonable counsel reason to believe that the defendant does not have a rational understanding of the proceedings against him. <u>See</u> <u>Dusky</u>, 362 U.S. at 402.

---

[4] Mental health professionals use a GAF scoring system to assess how well an individual functions in his daily life. Doctors consider social, occupational, educational, and psychological functioning before assigning a score. The scores range from 0 to 100, with 100 representing superior functioning. A score of 41-50 reflects "serious symptoms" (<u>e.g.</u>, suicidal ideation, severe obsessional rituals, frequent shoplifting) "OR any serious impairment in social, occupational, or school functioning (<u>e.g.</u>, no friends, unable to keep a job)." <u>White v. Comm'r of Soc. Sec.</u>, 572 F.3d 272, 276 (6th Cir. 2009) (citation omitted); <u>see also</u> American Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 32-34 (4th Ed. Text Revision 2000).

Curruthers' counsel submits that Curruthers never exhibited any irrational behavior; always had appropriate demeanor in attorney/client meetings and in court; assisted in trial preparation and at trial; was fully engaged in the criminal trial process; and appeared competent at trial and during sentencing. (ECF No. 5-1 ¶¶ 9, 10.) Counsel concluded that Curruthers' "mental health conditions were fully under control." (Id. ¶ 10.)

The record supports counsel's conclusion. Although the Court did not hold a competency hearing, Curruthers' mental health was discussed extensively at sentencing.[5] (See Cr. ECF No. 59 at 16:21-20:2; 23:19-25; 45:24-47:21.) The Court opined that:

> Mr. C[u]rruthers operates at a higher level than borderline intellectual functioning in my observation. He's a smarter man than that. . . . He's got a lot of savvy, and I think he has the ability to understand above what borderline intellectual functioning would suggest. However, I'm not trying to get behind the diagnosis because I'm not a professional. So, I'm going to accept the diagnosis except to say that it does appear to me that he operates at a higher level as a practical matter. . . . The bottom line [] here is that Mr. Carruthers knows right from wrong, and he's made a lot of bad choices in his life. He's able to understand the nature and consequences of his actions.

---

[5] Although the sentencing colloquy does not speak directly to Curruthers' capacity before trial, it does support the reasonable inference that Curruthers was cognizant of the proceedings against him. See Pate, 383 U.S. at 390 (Harlan, J., dissenting) ("The record reveals colloquies between [the defendant] and the trial judge which undoubtedly permitted a reasonable inference that [the defendant] was quite cognizant of the proceedings and able to assist counsel in his defense.").

(Id. at 46:25-47:17.)   During sentencing, Curruthers testified on his own behalf.  (Id. at 7:7-11:2; 32:21-36:7.)  His testimony demonstrated his competence and his understanding of the proceedings against him.  (See id.)  There were no indicia that Curruthers did not have a rational understanding of the proceedings.  See Dusky, 362 U.S. at 402.  Curruthers' counsel was not deficient for failing to request a competency hearing before trial.  Dubrule, 822 F.3d at 881.  Curruthers' § 2255 Motion on this ground is DENIED.

**B. Johnson Motion**

**1. Timeliness**

In his Johnson Motion, Curruthers seeks to amend his initial § 2255 Motion.[6]  Curruthers filed the original § 2255 motion on July 22, 2013.  (ECF No. 1.)  He filed his Johnson Motion on August 18, 2015.  (ECF No. 8.)  Curruthers' Johnson Motion was not filed within one-year of the filing of his initial § 2255 Motion.  Normally, his claim would be untimely.  See Porterfield v. United States, 2018 WL 1947423, at *2 (W.D. Tenn. Apr. 25, 2018) (citing Berry, 2017 WL 401269, at *10); see also Reese,

---

[6] Curruthers' Johnson Motion was filed before this Court decided his initial § 2255 Motion.  (ECF No. 8.)  Curruthers' Johnson Motion is not a successive petition under 28 U.S.C. § 2255(h) because this Court had yet to rule on his initial § 2255 Motion.  Clark, 764 F.3d at 658 ("A motion to amend is not a second or successive § 2255 motion when it is filed before the adjudication of the initial § 2255 motion is complete.").

2016 WL 1050719, at *2.  However, Curruthers' <u>Johnson</u> Motion is "save[d]" by § 2255(f)(3).  <u>See</u> <u>Oleson v. United States</u>, 27 F. App'x 566, 570-71 (6th Cir. 2001) (implying that a motion to amend a § 2255 motion is timely if it is filed within a year of one of § 2255(f)'s enumerated events).

Under § 2255(f)(3), a petitioner may bring a § 2255 motion within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  <u>Johnson</u> was decided recognizing a new right on June 26, 2015.  135 S. Ct. 2551.  In <u>Welch v. United States</u>, <u>Johnson</u> was made retroactively applicable to cases on collateral review.  136 S. Ct. 1257, 1265 (2016).  Curruthers filed his <u>Johnson</u> Motion on August 18, 2015.  (ECF No. 8.)  Curruthers' <u>Johnson</u> Motion is timely.

### 2. Analysis

In his <u>Johnson</u> Motion, Curruthers argues that he should be resentenced because, after <u>Johnson</u>, he no longer has at least three ACCA-predicate convictions and is no longer an armed career criminal.[7]  (ECF No. 8 at 1-3.)

---

[7] In his <u>Johnson</u> Motion, Curruthers contests only his prior conviction for solicitation to commit robbery.  (ECF No. 8 at 1-3.)  The Court sua sponte analyzes his classification as a whole.

At sentencing, Curruthers had six prior convictions that qualified as violent felonies under the ACCA:

(1) a 1986 Tennessee conviction for burglary in the third degree;

(2) a 1991 Tennessee conviction for solicitation to commit robbery;

(3) two 1991 Tennessee convictions for aggravated assault;

(4) a 1993 Tennessee conviction for burglary of a building; and

(5) a 2004 federal conviction for aiding and abetting armed bank robbery.

(PSR ¶¶ 31, 39, 40, 41, 46.) The Government concedes that, post-Johnson, Curruthers' burglary in the third-degree conviction and his solicitation to commit robbery conviction no longer qualify as violent felonies. (ECF No. 32 at 9-10); see Walker v. United States, 769 F. App'x 195, 198 (6th Cir. 2019) (subsequent history omitted); United States v. Benton, 639 F.3d 723, 730-31 (6th Cir. 2011) (noting that solicitation crimes in Tennessee do not typically qualify as violent felonies under the ACCA). The Government contends that Curruthers is not entitled to resentencing because he still has three predicate offenses that qualify as violent felonies. (ECF No. 32 at 4-9.)

### a. 1993 Tennessee Conviction for Burglary of a Building

On April 28, 1993, Curruthers was convicted under Tennessee Code Annotated § 39-14-402 for burglary of a building. (ECF No. 32-3.) The relevant judgment shows that Curruthers' burglary of

34

a building conviction was a Class D felony. (Id.) Convictions
for Class D felonies under § 39-14-402 necessarily qualify as
violent felonies under the enumerated-offenses clause of the
ACCA because the language of the relevant subsections falls
within the generic definition of burglary. See Priddy, 808 F.3d
at 685 ("[I]f the conviction records for a Tennessee burglary
offense indicate that the defendant was convicted of a Class D
felony, then that offense was necessarily a violation of Tenn.
Code Ann. § 39-14-402(a)(1), (a)(2), or (a)(3) and, as a result,
was a generic burglary . . . ."), abrogated by United States v.
Stitt, 860 F.3d 854 (6th Cir. 2017) (en banc), which in turn was
rev'd by 139 S. Ct. 399 (2018)); Brumbach v. United States, 929
F.3d 791, 794-95 (6th Cir. 2019) (confirming that Priddy remains
binding precedent after the Supreme Court's decision in Stitt),
cert. denied, 2020 WL 411809 (U.S. Jan. 27, 2020). Curruthers'
1993 Tennessee conviction for burglary of a building qualifies
as a violent felony under the ACCA.

### b. 2004 Federal Conviction for Aiding and Abetting[8] Armed Bank Robbery

On June 23, 2004, a jury convicted Curruthers of violating
18 U.S.C. § 2113(a) and (d). (N.D. Miss. No. 2:01-cr-00049-001,

---

[8] Aiding and abetting qualifies as a violent felony if the underlying
substantive crime qualifies as a violent felony. See Walker, 769 F.
App'x at 200 ("If a crime is a violent felony for purposes of the
ACCA's force clause, a conviction for this crime remains a violent
felony whether one is convicted of this crime as a principal or an

ECF Nos. 94-96, 100.)   Post-Johnson, this Circuit has held that
§ 2113(a) is divisible.   United States v. McBride, 826 F.3d 293,
295–96 (6th Cir. 2016).   McBride held that a violation of
§ 2113(a) constitutes a crime of violence under the use-of-force
clause of the U.S.S.G. when it involves the use of force and
violence or intimidation.   Id.   Curruthers' conviction for
violation of § 2113(a) involved force and violence or
intimidation because he was convicted of armed bank robbery under
18 U.S.C. § 2113(d), which requires the elements of "assault[ing]
any person, or put[ting] in jeopardy the life of any person[,]
by the use of a dangerous weapon or device, . . . ."   18 U.S.C.
§ 2113(d); (see N.D. Miss. No. 2:01-cr-00049-001, ECF No. 75.)
Curruthers' conviction for aiding and abetting armed bank robbery
under 18 U.S.C. § 2113(d) constitutes a crime of violence, see
McBride, 826 F.3d at 296, and qualifies as a violent felony under
the ACCA's use-of-force clause.[9]   Shelton v. Barnhart, 2019 WL
508069, at *4 (E.D. Ky. Feb. 8, 2019), aff'd, 2019 WL 4165112
(6th Cir. Aug. 16, 2019); In re Hines, 824 F.3d 1334, 1337 (11th

---

accessory.") (subsequent history omitted) (citing United States v.
Richardson, 906 F.3d 417, 426 (6th Cir. 2018)).

[9] The "crime of violence" analysis under the career-offender guidelines
is the same as the "violent felony" analysis under the ACCA.  Denson,
728 F.3d at 607 (6th Cir. 2013); cf. United States v. Fish, 758 F.3d
1, 5 (1st Cir. 2014) ("[T]he United States Sentencing Guidelines define
the term 'crime of violence' using language that is almost, but not
quite, the same as the language that ACCA uses to define the term
'violent felony.'").

Cir. 2016) (noting that a conviction for armed bank robbery under 18 U.S.C. § 2113(a) and (d) constitutes a violent felony under the ACCA's use-of-force clause); cf. United States v. Armour, 840 F.3d 904, 907-09 (7th Cir. 2016), as amended (June 26, 2017) (holding that the federal crime of attempted armed bank robbery qualifies as a crime of violence under the use-of-force clause).

### c. 1991 Tennessee Convictions for Aggravated Assault

In 1991, Curruthers was convicted under Tennessee Code Annotated § 39-13-102 on two counts of aggravated assault. (ECF No. 32-1 at 5-6.) The 1991 version of § 39-13-102 is divisible.[10] See Tenn. Code Ann. § 39-13-102 (1991). The Court must refer to

---

[10] The 1991 version of § 39-13-102 provided:

(a) A person commits aggravated assault who:

(1) Commits an assault as defined in § 39-13-101, and:

(A) Causes serious bodily injury to another; or

(B) Uses or displays a deadly weapon; or

(2) Being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect such child or adult from an aggravated assault described in subsection (a); or

(3) After having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, attempts to cause or causes bodily injury or commits or attempts to commit an assault against such individual or individuals.

(b) Aggravated assault is a Class C felony. The court shall consider as an enhancement factor at the time of sentencing that the victim of the aggravated assault was a law enforcement officer, firefighter, probation officer or parole officer performing an official duty.

the Shepard documents to determine which of § 39-13-102's alternative elements formed the basis of Curruthers' convictions. See Descamps, 570 U.S. at 260-62.

Although the relevant indictments charged Curruthers with attempted first-degree murder, the relevant judgments show that Curruthers pled guilty to, and was convicted of, two counts of aggravated assault. (See ECF No. 32-1 at 1-6.) When a defendant pleads guilty to crimes not charged in the indictments, courts must consider other Shepard documents to determine the elements the defendant "necessarily admitted" when pleading guilty. See Dillard v. United States, 768 F. App'x 480, 488 (6th Cir. 2019); McMurray, 653 F.3d at 377; see also Harper v. United States, 780 F. App'x 236, 242-45 (6th Cir. 2019) (Moore, J., concurring). In the transcript of his plea colloquy, the prosecutor recited the factual basis for Curruthers' guilty plea:

> The facts of the case are as follows: . . . [Curruthers] was in the Shelby County jail pending either an indictment or during the course of the indictment . . . . On October 17th, he and – or sometime in that vicinity of time, maybe a day or so before, he and the victims in this case, the two people who were also in jail with pending cases, one named Keith Mack, also known as Charles Williams, the other known as Harry Clay Jones got into an altercation.
>
> [Curruthers] had procured shanks, commonly known as shanks [sic] which were made in this particular case of broken off pieces of a toilet apparatus in a cell somewhere thereabout, eight inches long and about three-quarters of an inch in diameter. He then assaulted, along with some other people, he wasn't by himself but those other people were unable to identify clearly, he then assaulted principally [Jones]

38

giving him some multiple 20, 30 stab wounds to his body, starting at his neck and going on down.

[Jones] was in intensive care and as a result, not a direct result but an indirect result of those attacks, lost both his legs below the knees and the fingers on one of his hands.

[Mack] who is the nephew of [Jones] who is a very large person was also attacked and he claimed in the process of trying to attack [Jones] and received multiple stab wounds to the back of his head requiring stitches.

[Jones] -- well of course the report was made to the police. An investigation proceeded. [Mack] -- excuse me, [Curruthers] made several statements to several jailers. Basically his position was that these two guys jumped him several different times. They were trying to take over the pod. He felt threatened and he decided to take matters into his own hands. He bided his time. He talked one of his co-pod people to let [hi]m have that person's shanks which were hidden, and then he proceeded during shift change about five or three o'clock, four o'clock during shift change when the guards were fairly thin, he proceeded to attack those people he perceived to be a threat to him. He did a good job on [Jones]. [Mack] he didn't do quite as good a job on. Both of them left the pod and went to the hospital.

And his statement basically was I tried to kill him and I'd try again if they came back into the pod. I believe those are the main facts of the case.

(ECF No. 32-2 at 4:3-5:13.) Curruthers disagreed with the characterization of some of these facts. Specifically, he said he acted in self-defense. (See id. at 6:14-8:10.) Curruthers did not object to the foundational facts supporting his guilty pleas.

The facts include no reference to a parent-child relationship, which is a necessary element of § 39-13-102(a)(2),

or a restraining order, which is a necessary element of § 39-13-102(a)(3). (See id. at 4:3-6:13.)   The Court is satisfied that Curruthers pled guilty to § 39-13-102(a)(1)(A) (causes serious bodily injury to another) or § 39-13-102(a)(1)(B) (uses or displays a deadly weapon).   See West, 2020 WL 260430, at *4 ("[A]dmission to facts that satisfy an element of one aggravated assault variant, and [a] lack of admission to any elements of the others, supports an inference that [one] ple[d] guilty to that variant.").   Having confirmed that Curruthers was convicted under § 39-13-102(a)(1)(A) or § 39-13-102(a)(1)(B), the question is whether aggravated assault under either, both, or neither, as a category, constitutes a violent felony.   See Covington, 738 F.3d at 763.   Both do.

This Circuit has held that a violation of identical language in a succeeding version of § 39-13-102(a)(1)(A) qualifies as a violent felony under the ACCA's use-of-force clause.   See Campbell v. United States, 2017 WL 4046379, at *2 (6th Cir. Mar. 22, 2017).   This Circuit has also held that a violation of identical language in a succeeding version of § 39-13-102(a)(1)(B) qualifies as a violent felony under the ACCA's use-of-force clause.   See Braden, 817 F.3d at 933.   Curruthers' 1991

aggravated assault convictions qualify as violent felonies under the ACCA.[11]

Curruthers has at least three convictions that qualify as violent felonies under the ACCA: his 1991 Tennessee convictions for aggravated assault; his 1993 Tennessee conviction for burglary of a building; and his 2004 federal conviction for aiding and abetting armed bank robbery.[12]  Because Curruthers is properly classified as an armed career criminal, amending his § 2255 Motion to allow a Johnson claim would be futile. Parchman, 896 F.3d at 737–38.  Curruthers' Johnson Motion is DENIED.

### C. Rehaif Motion

Curruthers seeks to amend his original § 2255 Motion to add a claim under Rehaif v. United States, 139 S. Ct. 2191 (2019). (ECF No. 24.)  Eighteen U.S.C. § 922(g) makes it unlawful for certain persons to possess firearms. Eighteen U.S.C. § 924(a)(2) requires that a defendant "knowingly violate[ ]" § 922(g).  On June 21, 2019, the Supreme Court decided Rehaif.  139 S. Ct.

---

[11] Because violations of § 39–13–102(a)(1)(A) and § 39–13–102(a)(1)(B) are categorically violent felonies, it is unnecessary to determine the precise subsection to which Curruthers pled.

[12] Because Curruthers has at least three qualifying convictions under the ACCA, the Court need not consider the Hill criteria to determine whether Curruthers' 1991 convictions for aggravated assault were for crimes committed "on occasions different from one another."  See 18 U.S.C. § 924(e)(1); United States v. Hill, 440 F.3d 292, 297 (6th Cir. 2006).

2191. Rehaif held that, in a prosecution under § 922(g), the Government must prove both that a defendant knew he possessed a firearm (possession-knowledge element) and that he knew he belonged to the relevant category of persons barred from possessing a firearm (status-knowledge element). See 139 S. Ct. at 2195-2200. Curruthers argues that his indictment was deficient because it did not include the status-knowledge element and that his conviction is defective because the jury was never instructed on that element and the Government never proved it. (See ECF No. 24 at 2-4.)

Curruthers' Rehaif Motion seeks to amend his initial § 2255 Motion. Assuming without deciding that Curruthers' Rehaif claim is not time-barred and not procedurally defaulted, it fails on the merits.

The existence of prior felony convictions can contribute to the satisfaction of § 922(g)(1)'s status-knowledge element. See Rehaif, 139 S. Ct. at 2209 (Alito, J., dissenting) (noting that "[j]uries will rarely doubt that a defendant convicted of a felony has forgotten th[e] experience" of imprisonment and other sentencing consequences); United States v. Ward, 957 F.3d 691, 695 (6th Cir. 2020); United States v. Reed, No. 17-12699, 2019 WL 5538742, at *3 (11th Cir. Oct. 28, 2019) ("When [the defendant] possessed the firearm, he had been convicted of eight felony convictions . . . . [T]he jury could have

42

inferred . . . that [the defendant] knew he was not supposed to have a gun.") (emphasis in original); <u>United States v. Benamor</u>, No. 17-50308, 2019 WL 4198358, at *5 (9th Cir. Sept. 5, 2019) ("[T]he prior convictions for being a felon in possession of a firearm and being a felon in possession of ammunition proved beyond a reasonable doubt that Defendant had the knowledge required by Rehaif...."); <u>United States v. Williams</u>, 776 F. App'x 387, 388 (8th Cir. 2019) (per curium) (unpublished) (holding that defendant's prior guilty plea and imprisonment for murder were evidence that defendant had knowledge of his felon status under § 924(g)(1) for purposes of satisfying <u>Rehaif</u>); <u>United States v. Denson</u>, 774 F. App'x 184, 185 (5th Cir. 2019), <u>reh'g denied</u> (Aug. 8, 2019) (unpublished) (citing the presentence investigative report where defendant admitted that he had "previously been convicted of felony offenses" to hold that defendant had knowledge of his felon status under <u>Rehaif</u>); <u>United States v. Hollingshed</u>, No. 17-2951, 2019 WL 4864969, at *3 (8th Cir. Oct. 3, 2019) (holding that defendant's prior conviction and imprisonment "indicate[d] that [the defendant] knew he had been convicted" of a felony); <u>United States v. Spurlin</u>, No. 5:15-cr-1/MW/MJF, 2019 WL 4722467, at *6 n.5 (N.D. Fla. Aug. 16, 2019) ("[E]ven if [defendant] had claimed ignorance of his status as a convicted felon, his lengthy criminal history and extensive experience with the criminal justice system, the fact that

[defendant] was an experienced drug dealer, and the fact the he was on federal supervised release at the time he committed the offenses at issue, would make any claim that [defendant] did not know he was a convicted felon incredible."); Shrader v. United States, No. 1:09-cr-00270, 2019 WL 4040573, at *4 n.2 (S.D.W. Va. Aug. 27, 2019) (finding that defendant's prior convictions and substantial prison sentence would bar him from relief even if Rehaif were made retroactive on collateral review).

A defendant's stipulation that he was a convicted felon as of the date of the charged conduct contributes to the satisfaction of § 922(g)(1)'s status-knowledge element. Ward, 957 F.3d at 695 (citing United States v. Conley, 802 F. App'x 919, 923 (6th Cir. 2020)); Benamor, 2019 WL 4198358, at *5 (citing Christian Legal Soc'y Chapter of Univ. of Cal. v. Martinez, 561 U.S. 661, 677–78 (2010)); see Reed, 2019 WL 5538742, at *3 ("[T]he jury could have inferred that [the defendant] knew he was a felon from his stipulation...."); United States v. Jackson, No. 17-2727, 2019 WL 3916595, at *2 (7th Cir. Aug. 19, 2019), reh'g denied (Sept. 9, 2019) (holding post-Rehaif that a stipulation to being a felon was sufficient to satisfy the status requirement of § 922(g)(1)); Denson, 774 F. App'x at 185 (holding Rehaif's knowledge requirement met and noting that the defendant admitted in a factual résumé stipulation to having previously been convicted of a "felony offense"); United States

v. Anderson, No. 210CR00113LSCJHE, 2019 WL 3806104, at *2 (N.D. Ala. July 26, 2019), report and recommendation adopted, No. 210CR00113LSCJHE, 2019 WL 3805998 (N.D. Ala. Aug. 13, 2019) (finding that defendant's stipulation to prior felony convictions undermined his potential Rehaif argument); Boose v. Marske, No. 17-CV-303-JDP, 2019 WL 4393077, at *3 (W.D. Wis. Sept. 13, 2019) (finding that defendant's own stipulation and admission on direct examination that he had previously been convicted of several felonies "provide[d] more than enough evidence to support a reasonable jury verdict that [defendant] knew that he was a felon"); Hughey v. United States, No. 1:16CV184, 2019 WL 4277401, at *1 (E.D. Tex. Sept. 10, 2019) (finding that defendant's stipulation to being a felon foreclosed his Rehaif argument "on the merits"); United States v. Gordon, No. CR 17-20067, 2019 WL 3413045, at *3 n.1 (E.D. Mich. July 29, 2019) (same) ("Defendant pleaded guilty under § 922(g)(1) to being a felon in possession of a firearm and admitted his relevant status."); see also United States v. Harrison, 204 F.3d 236, 242 (D.C. Cir. 2000) (holding that defendant's stipulation eliminated the government's burden to "produce any evidence regarding that stipulation"); United States v. Hardin, 139 F.3d 813, 817 (11th Cir. 1998) (same); United States v. Muse, 83 F.3d 672, 678-79 (4th Cir. 1996) (similar); United States v. Branch, 46 F.3d 440, 442 (5th Cir. 1995) (same).  At a minimum,

stipulating to the fact that before the defendant was alleged to have possessed a firearm the defendant had been convicted of a felony allows the logical inference that the defendant had knowledge of the defendant's status when the crime was committed. See Ward, 957 F.3d at 696 ("[Defendant] made an [Old Chief v. United States, 519 U.S. 172 (1997)] stipulation at trial, pursuant to which he acknowledged that he 'was a convicted felon on and prior to the date of the charged conduct' . . . . The jury could have inferred from [that stipulation] that [defendant] also knew that he was a felon.").

Curruthers satisfies the status-knowledge element of § 922(g). He had been convicted of being a felon in possession of a firearm,[13] (see N.D. Miss. No. 2:01-cr-00049-001, ECF No. 108; see also PSR ¶ 46), and had been convicted of multiple other felonies, (see PSR ¶¶ 30-46). He stipulated to the fact that, before he was alleged to have knowingly possessed the firearms, he had been convicted of a felony. (Cr. Tr. Ex. No. 12; see Cr. ECF No. 65 at 19:4-26:18.) The jury was instructed to that effect. (See Cr. ECF No. 66 at 293:2-293:18.) That is sufficient to satisfy Rehaif. See Conley, 802 F. App'x at 924 ("At a minimum, the prior conviction[] for being a felon in possession

---

[13] Curruthers was convicted of being a felon in possession of a firearm in the case in which he was convicted of aiding and abetting armed bank robbery. (See N.D. Miss. No. 2:01-cr-00049-001, ECF No. 108.)

of a firearm . . . proved beyond a reasonable doubt that [defendant] had the knowledge required by Rehaif . . . .") (quoting Benamor, 937 F.3d at 1189); United States v. Robinson, No. 2:17-cr-20046, 2019 WL 7985173, at *6-7 (W.D. Tenn. Nov. 13, 2019) (collecting cases).

Because a jury would have found that Curruthers had the knowledge required by Rehaif, allowing Curruthers to amend his § 2255 Motion to allow a Rehaif claim would be futile. Parchman, 896 F.3d at 737-38. Curruthers' Rehaif Motion is DENIED.

### D. Motion to Appoint Counsel

Because Curruthers' is not entitled to relief, his motion to appoint counsel is DENIED AS MOOT.

## IV. Appeal

Twenty-eight U.S.C. § 2253 requires the district court to evaluate the appealability of its final order in a § 2255 proceeding and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue(s) that satisfy the required showing. 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the movant demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)); see also Henley v. Bell, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). Courts should not issue a COA as a matter of course. Miller-El, 537 U.S. at 337 ("Our holding should not be misconstrued as directing that a COA always must issue.").

Reasonable jurists could not debate whether Curruthers' petition should have been resolved in a different manner. Id. at 336. Because the issues raised in his motions do not merit further review, the Court DENIES a certificate of appealability.

This Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals brought under § 2255. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Id. at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). Rule 24(a) also provides, however, that if the district court certifies that an appeal would not be taken in good faith, or

otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. <u>See</u> Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is DENIED.

**IV.   Conclusion**

For the foregoing reasons, Curruthers' motions are DENIED.

So ordered this 10th day of July, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE